**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 26-cv-5449-WJM

SIDI MOHAMED ABDELLAHI,

Petitioner,

v.

JUAN BALTAZAR, in his official capacity as Warden of the Denver Contract Detention Facility, *et al*.

Respondents.

---

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

---

Before the Court is Petitioner Sidi Mohamed Abdellahi's Petition for Writ of Habeas Corpus, brought pursuant to 28 U.S.C. § 2241 ("Petition") (ECF No. 1), and Motion for Temporary Restraining Order ("Motion") (ECF No. 4). Respondents Juan Baltazar, in his official capacity as Warden of the Denver Contract Detention Facility; George Valdez, in his official capacity as Denver Field Office Director for U.S. Immigration and Customs Enforcement ("ICE"); Markwayne Mullin, in his official capacity as Secretary of U.S. Department of Homeland Security ("DHS"); David J. Venturella, in his official capacity as Senior Official Performing the Duties of the Director of ICE; and Todd Blanche, in his official capacity as U.S. Attorney General (collectively, "Respondents" or the "Government") filed a cursory response. (ECF No. 11.)

For the following reasons, the Court grants the Petition.

## I. BACKGROUND

This case presents an all-too-familiar fact pattern. Abdellahi is a native and

citizen of Mauritania. (ECF No. 1 at ¶ 27.) He entered the United States on or about July 2, 2015, on a B-2 visitor visa and has resided continuously in the United States for more than eleven years. (*Id.*) Abdellahi filed an application for asylum in September 2015, which was referred to the Immigration Court in September 2019. (*Id.*) His application remains pending, and he was scheduled for an individual hearing on the merits of his case for April 30, 2027. (*Id.*)

Abdellahi has three children—including a 10-month-old U.S. citizen daughter—and substantial familial and economic ties to the United States. (*Id.* at ¶ 28.) He has worked as a self-employed truck driver, consistently filed federal and state tax returns, and maintained stable housing throughout his residence in the United States. (*Id.*) According to the Petition, he has no criminal history and has complied with his immigration obligations, including attending his scheduled hearings. (*Id.*)

On August 31, 2026, Abdellahi was sleeping in his truck at a truck stop in New Jersey when ICE agents approached his vehicle and asked him to provide identification. (*Id.* at ¶ 29.) After he provided a photograph of his driver's license, the agents directed him to exit his vehicle and immediately handcuffed and arrested him. (*Id.*) They did not issue a warrant, nor did they provide any determination that he was likely to escape, as required by federal statute and regulations. (*Id.*)

After his arrest, Abdellahi was transferred to detention facilities in New Jersey, followed by Arizona, and most recently, Colorado, where he is currently detained. (*Id.* at ¶ 30.) His initial master calendar hearing was scheduled for September 29, 2026, in Elizabeth, New Jersey. (*Id.*) But after his transfer to Florence, Arizona, his master calendar hearing was rescheduled for September 18, 2026, and his custody

redetermination hearing for September 21, 2026. (*Id.*) Both hearings were canceled following his subsequent transfer to Colorado. (*Id.*) For this reason, he did not receive his first master calendar hearing or custody redetermination hearing before an Immigration Judge until September 29, 2026–twenty-nine days after his arrest. (*Id.* at ¶ 31.) During that hearing, the Immigration Judge ("IJ") denied Abdellahi bond based on flight risk after reviewing his removal proceedings. (*Id.*)

## II. LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004.) More specifically, 28 U.S.C. § 2241 "confers jurisdiction upon the federal courts to hear [such cases." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3) (authorizing any person to claim in federal court that they are being held "in custody in violation of the Constitution or laws . . . of the United States")). "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255 proceedings: they are an 'attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.' " *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

## III. ANALYSIS

Abdellahi challenges the legality of his detention, alleging that: (1) the warrantless arrest constituted a violation of the relevant Immigration and Nationality Act ("INA") provisions and implementing regulations (Count One); (2) Respondents violated the *Accardi* doctrine set forth under *United States ex rel. Accardi v. Shaughnessy*,

347 U.S. 260 (1954) (Count Two); (3) the warrantless arrest and resulting continuing custody violated his Fourth Amendment rights (Count Three); and (4) that his detention without an initial appearance or custody redetermination hearing for 29 days after his arrest violated his procedural due process rights (Count Four) and substantive due process rights (Count Five) under the Fifth Amendment. The Court finds that Abdellahi's warrantless arrest violated the INA, and as a result it need only reach the merits of Count One to resolve the Petition.

**A. Section 1226(a)**

As an initial matter, the Court construes this petition as implicitly contending that Abdellahi was detained pursuant to 8 U.S.C. § 1226(a)—which properly governs pursuant to the Tenth Circuit's recent decision in *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026). Accordingly, Respondents were obligated to detain Abdellahi in adherence to the procedural protections required under § 1226(a). But, as discussed below, they did not do so.

**B. Warrantless Arrest**

Abdellahi alleges that Respondents arrested and detained him without a warrant, as required under § 1226(a), nor did they establish a lawful basis for a warrantless arrest under 8 U.S.C. § 1357(a)(2) (Count One). (ECF No. 1 at 26–27.) Count Three, also related to the warrantless arrest, contains a Fourth Amendment challenge. (*Id* at 28–29.) Having concluded that Respondents violated § 1226(a) and § 1357(a)(2), the Court does not reach Abdellahi's contention as to the Fourth Amendment. *See United States v. Hardman*, 297 F.3d 1116, 1124 (10th Cir. 2002) ("[I]t is well-settled that federal courts should avoid deciding constitutional issues when statutory issues are dispositive.")

Abdellahi alleges that Respondents arrested him after he provided a photograph of his driver's license after they approached his truck and requested identification. (*Id*. at ¶ 29.) He further alleges that officers not only arrested him without a warrant, but also, "without an individualized, pre-arrest determination that he was likely to escape before a warrant could be obtained." (*Id*. at 27.) He contends that 1357(a)(2) requires a pre-arrest basis to believe Petitioner was likely to escape before a warrant could be obtained. (*Id*.) Nothing in the record indicates that Abdellahi received any such determination. Thus, that Respondents have violated their own regulations is manifestly clear. *See* 8 U.S.C. § 1357(a)(2) (allowing an ICE officer to make warrantless arrests of noncitizens "*if he has reason to believe* that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest.") (emphasis added); 8 C.F.R. § 287.8(c)(ii) (ICE officer must obtain arrest warrant "except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained."). "[C]ourts across the country routinely hold that (1) ICE violating its own regulations in detaining an individual is a due process violation, and (2) this violation makes the detention unlawful and the proper remedy is release." *Izquierdo Navarro v. Bondi*, 2026 WL 468582, at *3 (D. Colo. Feb. 18, 2026) (collecting cases). The Court makes that same conclusion here.

Respondents have failed to provide any argument explaining how they satisfied the requirements under §1357(a)(2). Indeed, "[f]or purposes of this specific case, Respondents are not submitting a brief in opposition to the Petition detailing the facts and circumstances of this case." (ECF No. 11 at 1.) Respondents further recognize

that "if the Court does grant the Petition, the appropriate relief would be an Order directing that Respondents, within seven days of this Court's Order," citing *Santillan Quiroz*, 180 F.4th 1226 (10th Cir. 2026).

In sum, "[t]he Government has offered neither a justification nor a formal process for the deprivation of Petitioner's protected liberty interest." *Sosa v. De Anda-Ybarra*, 2026 WL 1453999, at *2 (D.N.M. May 22, 2026). Together, these wrongs constitute violations of the INA.

**C. Remedy**

The Government declined to substantively address Abdellahi's claims. (ECF No. 11.) It even concedes that "the appropriate relief would be an Order directing that Respondents, within seven days of this Court's Order, release Petitioner from detention." (*Id.* (emphasis in original).) Abdellahi requests immediate release. (ECF No. 1 at ¶¶ 52, 57.)

In the Court's view, only immediate release, and not a bond hearing, will suffice. This Court has already written of its "concern[] that the immigration courts are not affording immigrants fair bond hearings," as "the mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes has become impossible to ignore." *Pal v. Lyons,* 2026 WL 937962, at *4 (D. Colo. Apr. 7, 2026); *see also Quiroz Zacarias v. Mullin,* 2026 WL 1092162, at *4–*5 (D. Colo. Apr. 22, 2026) (concluding "the IJ deprived [petitioner] of his due process rights" by issuing a bond decision that was "wholly bereft of any analysis whatsoever"). Indeed, courts across the country have, with increasing frequency, ceased "order[ing] even initial bond hearings in cases like this one involving unlawful detention under § 1225(b) because Respondents' conduct can no longer be

attributed to mere negligence or ineptitude, . . . and doing so would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications." *Zheng v. Rokosky,* 826 F. Supp. 3d 545, 563 (D.N.J. 2026) (collecting cases).

Given this reality, the Court will order Abdellahi's immediate release.

## IV. CONCLUSION

For all these reasons, the Court ORDERS as follows:

1. The Court's Order to Show Cause (ECF No. 8) is MADE ABSOLUTE and Abdellahi's Petition (ECF No. 1) is GRANTED;

2. The Court GRANTS this relief to Abdellahi pursuant to Count One of the Petition and does not reach the merits of Counts Two through Five;

3. Abdellahi's Motion (ECF No. 4) is DENIED as MOOT;

4. **By no later than tomorrow, November 5, 2026**, Respondents shall IMMEDIATELY RELEASE Abdellahi on his own recognizance, along with all his personal belongings, and may not impose any conditions of release or supervision that were not imposed following his application for asylum in 2015. **No additional conditions of release shall be imposed on Abdellahi by Respondents**. Respondents shall further facilitate Abdellahi's transportation from the detention facility by providing all necessary identity and travel documents to return to his primary address,

5. Respondents are ENJOINED from re-arresting or re-detaining Abdellahi unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that he is a flight risk or danger to the

community such that his physical custody is legally justified pursuant to 8 U.S.C § 1226(a). At any such bond hearing, Respondents shall bear the burden of proof, and Abdellahi shall be allowed to have counsel present. This injunction shall remain in effect until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

6. During such periods of time as Abdellahi remains in Respondents' custody, Respondents shall continue to be ENJOINED from removing, transferring, or causing the removal or transfer of, Abdellahi from the District of Colorado until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

7. Should Abdellahi believe he has a good faith basis to seek attorney's fees pursuant to the Equal Access to Justice Act, he is GRANTED leave to file a motion seeking the same, along with all supporting documentation, by no later than **December 2, 2026**. Respondents shall file a response by no later than **December 23, 2026**, and Abdellahi shall file a reply by no later than **January 6, 2027**; and

8. Judgment shall enter in Abdellahi's favor and against Respondents on **November 18, 2026,** UNLESS prior thereto the Court is informed that Respondents have failed to fully and timely comply with the terms of this Order.

Dated this 4th day of November, 2026.

BY THE COURT:

William J. Martinez
Senior United States District Judge